# Friedsam, Appellant, *v.* Pittsburgh, Butler & New Castle Railway Co.

*Negligence—Damages—Continuing disability—Charge of the court—Comment on evidence—Comment on appearance of plaintiff.*

In an action to recover damages for continuing personal disability resulting from accident, where there is evidence tending to show that the physical disability of the plaintiff had a different origin, the trial judge cannot be convicted of error because he remarked to the jury that the plaintiff appeared to be able to conduct his own affairs, and that if so there ought not to be an allowance for loss of future earning power; and this is especially so if such remark is accompanied by the qualification "unless you are satisfied that he is incapacitated."

In such a case the impairment of the plaintiff's ability to manage his business is a proper subject of compensation, but he is not entitled in addition to that to damages for the loss of ability as salesman, if it appears that he had not been engaged in such occupation for many years.

Argued April 14, 1915. Appeal, No. 99, April T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 173, on verdict for plaintiff in case of R. W. Friedsam v. Pittsburgh, Harmony, Butler & New Castle Railway Company. Before RICE, P. J., ORLADY, HEAD, HENDERSON and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the jury returned a verdict for plaintiff for $1,036. On a motion for a new trial, REID, J., filed the following opinion:

This is a motion ex parte plaintiff for a new trial. The reasons are based upon the alleged inadequacy of the verdict and errors of the court in instructing the jury.

The plaintiff claimed damages against the defendant by reason of the occurrence of an accident in which he

sustained serious injuries, the negligence of defendant being admitted.

The main controversy at the trial was as to the character and permanency of the injuries sustained by plaintiff, and whether or not symptoms described by plaintiff and physicians, such as headaches, lack of energy, dizziness, swelling of the legs, pains, etc., claimed to exist and to effect the plaintiff down to the date of trial were, in fact, due to the injuries resulting from the accident or to the presence of bone syphilis. This latter condition was alleged by defendant's medical experts to exist and to be responsible for several of the conditions described, it being testified that it existed at the time of the occurrence of the accident, and that plaintiff is yet suffering from it.

There was sufficient evidence adduced upon this subject on behalf of the defendant to warrant the jury in determining that this disease, to some extent at least, was responsible for the physical condition of plaintiff, and to warrant a reduction in the amount of the verdict by reason of the existence of such condition.

The accident occurred July 4, 1912, plaintiff being thrown from a standing car of defendant, which was struck by another rapidly approaching car, in which fall he was seriously shocked and bruised, had both legs injured, one being much more severely hurt than the other. This leg was bruised, and the ankle joint, according to the testimony of the plaintiff himself, was crushed. He also stated that the ligaments were torn. He complained, in addition, to some injury to the head and his right arm, the latter resulting, as he claims, in a partial paralysis, affecting two fingers of that hand.

In addition to the pain incident to the accident at the time and the injuries then sustained, he claims to have suffered from that time down to the present from headaches, dizziness, numbness of the fingers above referred to, swelling of the limbs, a lack of energy and of ability to do the work which he formerly did.

His former employment and that which he is at present engaged in was as manager of a commission business conducted by himself, requiring his presence in and about the produce yards, his helping occasionally with the work of loading and unloading wagons, cars, etc.

He was confined to the Allegheny General Hospital for five weeks, at the end of which time he left, using crutches, or a crutch and cane.

Doctor King, the physician in charge of the hospital, who treated plaintiff at the time, testified that there were no very serious injuries to the legs, there being some abrasions, contusions and swelling, and that by reason of this swelling he had placed the most serious injured leg in a plaster cast. He says that there was no injury to the arm, and that the patient did not complain of any such.

He further says that the patient could have left the hospital at the end of three weeks, at which time he attempted to get rid of him, and that it was not necessary that he should use crutches at the time he left.

According to plaintiff's testimony, he continued to use his crutches for a period of four months, and after that time used a cane. At the trial, however, he used neither.

He stated that he returned to his place of business on September 1, 1912, in a taxicab and was able to remain but a short time looking after his affairs, and that he continued from that date down to January 1, 1913, to return in a similar way, giving but partial attention to his business. After January 1st he appears to have assumed the ordinary management of his business as it was conducted before his injuries.

Plaintiff, however, contended at the trial, and offered testimony of associates and acquaintances, who have seen him about his place of business to support his testimony, that he is not as well able to manage his affairs and to transact the commission business as he was before

the injury, lack of energy and activity being one of the chief difficulties.

One of his witnesses described him as "dragging around like a dead one."

Several witnesses for the defense, however, testified that, in their judgment, he was as well able to attend to the commission business at the time of the trial of this case as he had been before the accident, saying that they saw no difference in him.

Two witnesses testified that after the accident he was helping to load or stack a car of carrots, the bags containing in weight from ninety to one hundred and fifty pounds, and in this work he would take one side of the bag and help in lifting and disposing of it.

Another witness testified that in February, 1914, he had seen plaintiff rolling and himself lifting into a wagon barrels of vegetables on one occasion, and on another had seen him on the top of a refrigerator car lifting and throwing to the ground pieces of ice weighing one hundred pounds, after finishing which he jumped from the third rung of the ladder on the car to the ground, a distance of six feet. The same witness also testified that he had seen him running through the snow to overtake a driver, and that he moved as well as any man.

Plaintiff's own testimony as to his earning capacity was that before he went into the produce business for himself he received sixty dollars a week from his employer, and that he considered himself worth as manager of a commission-house at least seventy-five dollars per week. A number of plaintiff's witnesses testified that, in their judgment, his services were worth from fifty to sixty or seventy-five dollars a week.

The jury awarded him a verdict for ten hundred and thirty-six ($1,036) dollars, including the sum of ninety-six dollars, Doctor Greer's bill for medical attention. It was admitted by plaintiff that the defendant had paid

other bills for hospital and surgical treatment to the amount of two hundred and twelve dollars.

It will be seen that so far as the questions of extent of injury, loss of time, value of services, etc., were concerned, they were purely question of fact for the jury. It cannot be contended that the jury was bound to award plaintiff compensation for loss of earning power at his own estimate of seventy-five dollars per week for the whole period, nor for the period from September 1st, when he was able to return and do some work at his office, down to January 1st, should he be allowed for entire loss of earning power, since it was evident that he was not then entirely incapacitated.

As the jury could with good reason have determined that under all the circumstances the minimum price fixed by the witness, fifty dollars per week, was the value of plaintiff's services, it cannot be said that they did not make a fair allowance for the actual total loss of time disclosed by the testimony and for the remaining time when there was but partial loss of earning power. The amount of the verdict indicates that there was a substantial allowance made for these items as well as for the items of future incapacity and past and future pains and suffering.

This being the fact, it cannot be determined by the court that the amount of the verdict was inadequate, especially in view of the fact that the testimony of the defendant's physicians was to the effect that a great part of plaintiff's lack of earning power from headaches, swelling of the legs, lack of energy, etc., was due to the prevalence of the disease already referred to.

Whilst the court might, if it had been called upon to fix the amount of compensation, have awarded a somewhat larger sum, that is no reason why it should now disregard the verdict arrived at by the careful consideration of a jury.

In the "Additional Reasons" filed, counsel for plaintiff specify a number of instances in which it is claimed

the trial judge erred in presenting the case to the jury. The second, third and sixth of these reasons may be quickly disposed of.

As to the language quoted in the second reason, it surely cannot be seriously contended that it does not correctly present the law. Perhaps, the concluding phrase "So far as we know the business went on just the same" is that to which special exception is taken. Yet, it is and was true, that so far as any evidence was presented at the trial, there was nothing to indicate that some person other than the plaintiff did not conduct his business during his absence. Even if this were not true, there could be no recovery for loss of profits.

The third reason quotes as erroneous the words "He admits there is another test, blood test; but says it is not final, that a blood test may be prepared for and may deceive."

The court did so state, in connection with the discussion of the testimony of Doctor Johnson, an X-ray specialist, who described the plates showing (as he contended) the indications of bone syphilis. The reference is to the witness's answer to cross-examination, in which he did admit that there was another test, and did maintain that it might be prepared for and might deceive.

The sixth reason is that the court erred in saying of plaintiff: "He lost the opportunity of earning money, which he is entitled to receive by reason of his earning capacity, tested by what his services were worth in the market."

This was an attempt by the court to present the idea that the jury must determine plaintiff's loss of earning power by reference to what his services would reasonably be worth to an employer, in other words, "in the market" in which the value of the services of such men are determined. The phrase may not have been a happy one, but it could not have injuriously affected the rights of plaintiff.

The fourth reason is: "The court erred in charging

the jury page of charge 'There is that of the ability of this man, the plaintiff, to do things in spite of his pretended disability.' "

Standing alone, detached from the context, there might seem to be a statement thus made by the court that plaintiff's disability was a pretended one.

The appellate courts have frequently criticised the use of such detached phrases to convict a trial court of error.

To understand this sentence, it is necessary to consider that the court in a preceding part of its charge attempted to present defendant's theory that plaintiff was suffering from a form of syphilis, and after thus discussing it and presenting briefly the testimony of plaintiff's witnesses in contradiction to that theory, the court then proceeded thus:

"In addition to this defense made by the defendant on the subject of the condition of syphilis, (There is that of the ability of this man, the plaintiff, to do things in spite of his pretended disability) ; to support which they called a detective......who told you on three or four different occasions he saw the plaintiff doing those things which apparently only a well man could do, lifting barrels, helping to lift heavy weights......," etc.

We have included the detached and criticised phrase in brackets. It will be seen that the court, instead of giving its views as to the pretended disability, was presenting the defendant's theory that it was but a pretense, which was within the bounds of the court's duty and its right. The jury could not have misunderstood it any more than if the trial judge had used the words "In spite of the disability which defendant claims is but pretended."

The remaining reasons comprising the first, fifth and seventh are so connected that they may be considered together.

The trial judge (charge, page 17), after speaking of allowances for future pain and suffering, said: "So if you find his earning power has been diminished,—but

I doubt if you will come to that for the future, because he appears to be, at present at least, able to conduct his own affairs,—and I think there ought to be no allowance for losses of future earning power, unless you are satisfied he is incapacitated.

It will thus be seen that, notwithstanding the court's expression of opinion, in the concluding sentence the matter was left to the jury.

Counsel for plaintiff excepted to this presentation, to which exception the court replied as follows: "I wish to say......that the court's expression is simply that of an opinion......not to bind in any way or coerce or control the jury by simply saying that the court assumes from the appearance of this plaintiff, and from his manner, and all the testimony that has been adduced here, that he, at present, appears to be able to conduct his business normally. But if you gentlemen should find that that is not the fact, if you are satisfied that notwithstanding his appearance,—and his appearance is one of the matters to be considered by you in the evidence,—if you are satisfied, you have a right, as I previously told you, to allow him compensation by reason of his diminished earning power. The court cannot direct you to find facts in cases of this kind. The court may in proper cases suggest to you what it thinks of the certain conditions, but they cannot control you in any manner, nor is it the purpose of the court to control you in any manner."

It will thus be seen that the court carefully guarded the jury against the effect of the expression of opinion of which counsel for plaintiff contends leaving it entirely to the jury to determine every fact connected with plaintiff's disability, whether past or future.

The other matter of which counsel complains, and in which the language of the court is quoted in the fifth reasons, was merely an amplification of the propositions already discussed, was entirely admonitory, did not attempt to deprive the jury of the right to determine any

498 FRIEDSAM, Appellant, *v.* PGH., B. & N. C. RY. CO.

Opinion of Court below—Opinion of the Court. [60 Pa. Superior Ct.

question in the case, but left the whole matter entirely to them.

In view of the substantial verdict, it is evident that the court's instruction thus complained of, even if erroneous, did not materially injuriously affect the plaintiff.

The motion for a new trial is refused.

*Errors assigned* were various portions of the charge.

*L. K.* and *S. G. Porter,* for appellant, cited: Goodhart v. Pennsylvania R. R. Co., 177 Pa. 1.

*Walter Lyon,* for appellee, cited: Fitzpatrick v. Union Traction, 206 Pa. 335; Beck v. B. & O. R. R. Co., 233 Pa. 344.

OPINION BY HENDERSON, J., July 21, 1915:

All of the assignments of error relate to the charge of the court. The first six contain excerpts with respect to which complaint is made that the court expressed an opinion as to the extent of the plaintiff's injuries and his physical condition at the time of the trial which was prejudicial to him and had a tendency to influence the jury to bring in a verdict for a less amount than the evidence warranted. When these parts of the charge are read with their appropriate context we are not persuaded that the court exceeded the privilege accorded to the trial judge in expressing his view as to the weight to be given to the testimony of a witness where the question is fully committed to the jury notwithstanding the view entertained by the court. It is to be observed that the court's remark that the plaintiff appeared to be at the time of the trial able to conduct his own affairs and that if so there ought not to be an allowance for loss of future earning power was accompanied with the qualification: "unless you are satisfied that he is incapacitated." The jury could only have understood this to mean that if

the plaintiff were incapacitated at that time and would probably so continue for any period he was to be compensated for such incapacity.   And in the second assignment the language of the court was "That the court's expression is simply that of an opinion of the court not to bind in any way or coerce or control this jury by simply saying that the court assumes from the appearance of this plaintiff and from his manner and all the testimony that has been adduced here that he at present appears to be able to conduct his business normally." There is nothing in the case to support the assumption that the court might not with propriety make such a remark in a case where the plaintiff was seeking to recover damages for continuing disability resulting from his accident and where there was evidence tending to show that the physical difficulty of which he complained had a different origin.   The jury was specifically advised that they were not to be bound in any way or controlled by the view expressed by the court.   It cannot be seriously contended that recovery should be had for diminished earning ability if there was no evidence that it existed or probably would exist in the future, and the caution of the court to the jury to guard against allowing compensation for time beyond which the plaintiff had ceased to be incapacitated was not inappropriate; especially when coupled immediately with the instruction that if it was made to appear at the time of the trial that he was incapacitated they should allow him compensation for that injury.   We are unable to see that the reference in the charge to the testimony of the medical experts did the plaintiff any harm.   Much of the trial was devoted to a consideration of the cause of the symptoms of which the plaintiff complained at the trial and to the inquiry whether or not his injury was permanent.   The attention of the jury was drawn to the relevant testimony in such a manner as to leave the whole question open to determination by the jury.   The profits of the business could not be taken account of

as a measure of earning capacity: Goodhart v. Railroad, 177 Pa. 1; and we do not find competent evidence of loss of future earning power which could be made the basis of a definite finding in damages. The plaintiff was engaged in business for himself as a produce dealer and had been so engaged for ten years. The impairment of his ability to manage his business was a proper subject of compensation, but he was not entitled in addition to that to damages for the loss of ability as a salesman, for he had not been engaged in that business for many years. To have permitted him to recover for loss of earning power in that capacity as well as to have compensated him for impairment of his ability to prosecute the business in which he was engaged would have permitted a recovery on a basis not recognized by any authority which has been brought to our attention. The opinion of the trial judge on the motion for a new trial covers the propositions presented by the learned counsel for the appellant and answers them at length. We do not find anything in the record which requires a reversal of the judgment.

Judgment affirmed.